UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JESSE BARNEY HELMS,**<br><br>　　Plaintiff,<br><br>　v.<br><br>**OFFICER MILLER,** *et al.***,**<br><br>　　Defendants. | Case No. 22–cv–01325–ESK–MJS<br><br><br>OPINION |

**KIEL, U.S.D.J.**

　　**THIS MATTER** comes before the Court on defendant Victoria Kuhn's motion to dismiss and for partial summary judgment (Motion) (ECF No. 62.) Plaintiff Jesse Barney Helms opposes the Motion. For the following reasons, I will grant the motion.

　　**I.　PROCEDURAL HISTORY**

　　Plaintiff filed a *pro se* complaint on March 10, 2022 pursuant to 42 U.S.C. § 1983 (Complaint). (ECF No. 1.) He alleged defendant Officer Miller of the Salem County Correctional Facility (Salem Jail) loudly screamed into his ear, causing permanent hearing loss and migraine headaches. (*Id.* p. 6.) Plaintiff filed an amended complaint on April 18, 2022 (Amended Complaint). (ECF No. 15.) District Judge Noel L. Hillman allowed the Amended Complaint to proceed on January 27, 2023. (ECF No. 23.)

　　Plaintiff obtained counsel and filed a second amended complaint (Second Amended Complaint) on January 25, 2024. (ECF No. 57 (Sec. Am. Compl.).) The Second Amended Complaint added Salem Jail, Salem County, Salem Jail warden John Cuzzupe, and New Jersey Department of Corrections (Department) Commissioner Victoria Kuhn as defendants. (Sec. Am. Compl.

¶¶ 3, 4, 6.) Kuhn filed the Motion on February 29, 2024. (ECF No. 62.) Plaintiff filed opposition on May 10, 2024. (ECF No. 87.)

## II. FACTS

### A. Allegations in Second Amended Complaint

Plaintiff was a pretrial detainee in the Salem Jail on February 22, 2022. (Sec. Am. Compl. ¶¶ 9, 10.) After completing his kitchen duties, plaintiff went into the breakroom and rested his head on the table. (*Id.* ¶¶ 11, 12.) Miller stood "very close" to plaintiff's left ear and screamed directly into it. (*Id.* ¶14.) She told plaintiff that she did that because "she 'was trying to give [plaintiff] a heart attack.'" (*Id.* ¶ 16.) As a result, plaintiff sustained permanent hearing loss in his left ear, as well as anxiety and depression from the hearing loss. (*Id.* ¶ 18.)

Plaintiff asserts that Kuhn and Cuzzupe "as decision-makers, were aware of the detention officers causing unjustifiable injuries to prisoners … ." (*Id.* ¶ 29.) He further asserts Kuhn and Cuzzupe knew, or should have known, "of the aforementioned conduct and they were aware of alternatives for preventing such conduct, they either deliberately chose not to pursue these alternatives, or they acquiesced to a long-standing policy or custom of inaction." (*Id.* ¶ 30.)

### B. Kuhn's Statement of Facts

Kuhn asserts she is entitled to summary judgment on plaintiff's state tort claims because he did not file a notice of tort claim as required by the New Jersey Tort Claims Act, N.J.S.A. § 59:8–3, *et seq.* (Tort Claims Act). (ECF No. 62–1 pp. 24, 25.) She submitted the certification of Terrance Little, the Supervising Investigator for the New Jersey Treasury Department Division of Risk Management (Division) in support of the Motion. (ECF No. 62–2 ¶ 1.) He is responsible for the custody of tort claim notices that are filed with the Division. (*Id.* ¶2.) Little searched Division records for a tort claim notice filed

2

by plaintiff regarding the February 22, 2022 incident but did not find any.  (*Id.* ¶¶ 3,4.)

### C. Plaintiff's Response in Opposition

Plaintiff denies all of Kuhn's stated facts. (ECF No. 87 ¶ 1.)  He "believes that the commencement of his initial lawsuit and the subsequent [Second] Amended Complaint substantially complied with the notice requirement."  (*Id.*)  He further argues Kuhn has not been prejudiced by "not directly receiving formal notice from [p]laintiff … ."  (*Id.*)

## III. LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  "Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's

3

claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Anderson*, 477 U.S. at 251).

### IV. DISCUSSION

Kuhn moves for dismissal of plaintiff's federal claims against her in the Second Amended Complaint based on sovereign immunity and failure to state

4

a claim. (ECF No. 62–1 p. 2.) She moves for summary judgment on plaintiff's state tort claims because he did not file a notice of tort claim as required by the Tort Claims Act. (*Id.* pp. 24, 25.)

### A. Official Capacity Claims

Plaintiff's claims in the Second Amended Complaint were filed against Kuhn in her official capacity and individual capacity. (Sec. Am. Compl. ¶ 5.) Kuhn now argues that the official capacity claims must be dismissed because they are barred by the Eleventh Amendment. (ECF No. 62–1 p. 23.) I agree and will dismiss the official capacity claims with prejudice.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). This immunity extends to Tort Claims Act claims as well. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 n. 9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); *Allen v. New Jersey State Police*, 974 F.3d 497, 505 (3d Cir. 2020) ("[T]he New Jersey Tort Claims Act does not constitute waiver of immunity from suit in federal court; the statute reflects a limited waiver only of the State's immunity from suit in state court." (emphasis omitted)).

I will dismiss the claims against Kuhn in her official capacity as she is immune from suit.

### B. Individual Capacity Claims

Kuhn argues the individual capacity federal claims against her must be dismissed for failure to state a claim. (ECF No. 62–1 pp. 14, 19.) She argues that the Second Amended Complaint "relates to the conduct and conditions of [Salem Jail], not a state prison. Kuhn is an employee of the State of New Jersey, not Salem County, and cannot be held liable for the day-to-day operations or conditions of [Salem Jail]." (*Id.* p. 14.) She also asserts plaintiff has failed to allege enough facts to state a § 1983 claim based on supervisory liability. (*Id.* p. 19.)

Plaintiff alleges Kuhn "had an obligation and duty to the [p]laintiff to properly supervise and discipline any employee, including those persons responsible for the [p]laintiff at the time he was incarcerated … ." (Sec. Am. Compl. ¶ 51.) "Claims alleging a failure to train, failure to discipline, or failure to supervise are a subset of ... policy or practice liability." *Womack v. Moleins*, No. 10–cv–02932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015) (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015)). Plaintiff must first "identify a supervisory policy or practice that the supervisor failed to employ." *Barkes*, 766 F.3d at 317. He must then provide sufficient facts that, if true, would show: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff has sufficiently alleged that Kuhn has supervisory authority over the Salem Jail. *See Brown v. Smith*, No. 20–cv–08463, 2023 WL 120458, at *8 (D.N.J. Jan. 5, 2023) (accepting as true factual allegation that "the Deputy

Cumberland County Administrator, is 'responsible for, among other things, the development, implementation, and administration of programs within the Cumberland County Jail.'") "[T]he meaning of the concept of a supervisor varies from one legal context to another." *Vance v. Ball State Univ.*, 570 U.S. 421, 434 (2013). Plaintiff will ultimately have to support his claim that Kuhn oversees the Salem Jail, but I must accept this factual allegation as true for purposes of the motion to dismiss. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). However, I find that plaintiff has not otherwise stated a claim against Kuhn.

Plaintiff has identified alleged deficiencies in Salem Jail's procedures, *see* Sec. Am. Compl. ¶ 56, but he has not satisfied the deliberate indifference element. "The essence of the type of claim ... is that a state official, by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." *Barkes*, 766 F.3d at 319–20 (emphasis in original). Here, plaintiff has not provided facts that would support an inference that Kuhn knew that Salem Jail employees "would confront a particular situation, … the situation involves a difficult choice or a history of employees mishandling, and … [that] the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). The allegations in the Second Amended Complaint are legal conclusions and nothing more than "a 'formulaic recitation of the elements of a [supervisory liability] claim.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, Sec. Am. Compl. ¶ 37 ("Defendants had by tacit or explicit consent, or by deliberate indifference, allowed unlawful and unconstitutional regulations, rules,

7

directive, edicts, and/or procedures to exist which either because of inadequate, inappropriate or insufficient training, or because of the facial application and implementation of same was the moving force behind horseplay tactics by detention officers which caused unjustifiable injury to [p]laintiff, resulting in significant injuries and the unnecessary and wonton infliction of pain"), ¶ 38 ("Defendants, by deliberate indifference or tacit acquiescence, failed to properly train, supervise and discipline its jail staff, inclusive of the named Defendants Miller, Cuzzupe and Kuhn, such that the violation of [p]laintiff's constitutional rights has become the accepted practice.  Defendants have routinely failed to take measures to prevent the aforesaid misconduct and particularly the conduct alleged to have violated Plaintiff's constitutional rights.") [1]  "As mere restatements of the elements of [plaintiff's] supervisory liability claims, they are not entitled to the assumption of truth." *Santiago*, 629 F.3d at 132. Plaintiff has not pleaded any facts that would support his claims against Kuhn; therefore, I will dismiss the claims against Kuhn without prejudice.

### C.     New Jersey Tort Claims Act

Kuhn argues that she is entitled to judgment as a matter of law on plaintiff's Tort Claims Act claims because plaintiff did not comply with the notice procedures.  (ECF No. 62–1 p. 24.)

The Tort Claims Act states in relevant part that "no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."  N.J.S.A. § 59:8–3(a).  Plaintiffs must file a notice of tort claim with the public entity being sued within 90 days of the incident and wait for a response before filing a lawsuit.  N.J.S.A. § 59:8–8(a).

---

[1] I also note that the Second Amended Complaint refers to plaintiff as the "decedent" at several points. (*See* Sec. Am. Compl. ¶¶ 46, 55, 56, 61, 62, 71.)  I presume this is an error and that plaintiff is not deceased.

The notice requirement is "a jurisdictional precondition to filing suit," *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted), and suits that do not comply with the notice provision are "forever barred from recovering against a public entity or public employee." N.J.S.A. § 59:8–8.

Kuhn submits the certification of Division Supervising Investigator Terrance Little in support of her motion. (ECF No. 62–3.) Little certifies that he examined the Division's files for a notice of tort claim filed by plaintiff but did not find any regarding a February 2022 incident. (*Id.* ¶¶ 4, 5.) Kuhn has therefore presented evidence that plaintiff did not comply with the Tort Claims Act before filing his lawsuit.

Plaintiff has not presented evidence in response that he filed a notice of tort claim. He also has not presented evidence that he obtained permission to file a late notice of tort claim. *See* N.J.S.A. § 59:8–9 ("A claimant who fails to file notice of his claim within 90 days … may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby.") Instead, he argues that he "substantially complied with the notice requirements" when he filed the Second Amended Complaint and that Kuhn has not been prejudiced. (ECF No. 87–2 pp. 15, 16.)

"The doctrine of substantial compliance is an equitable one which is utilized to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." *Cnty. of Hudson v. State, Dep't of Corr.*, 208 N.J. 1, 22 (2011) (internal quotation marks omitted). "A court deciding a substantial compliance claim considers the following factors:

> (1) the lack of prejudice to the defending party;

> (2) a series of steps taken to comply with the statute involved;
>
> (3) a general compliance with the purpose of the statute;
>
> (4) a reasonable notice of petitioner's claim, and
>
> (5) a reasonable explanation why there was not a strict compliance with the statute.

*H.C. Equities, LP v. Cnty. of Union*, 247 N.J. 366, 386 (2021) (internal citation omitted). "In Tort Claims Act cases, the doctrine of substantial compliance 'has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute.'" *Id.* (quoting *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. 130, 159 (2013)).

New Jersey courts have consistently concluded that "the filing of a complaint would not be a substitute for the notice required by statute, whether the complaint was filed within the 90-day or the one-year period." *Guzman v. City of Perth Amboy*, 214 N.J. Super. 167, 171–72 (N.J. Super. Ct. App. Div. 1986); *see also Cnty. of Hudson*, 208 N.J. at 23 ("[E]ven the most generous application of the substantial compliance doctrine has rejected the notion that filing a complaint is itself a substitute for notice.") Therefore, plaintiff may not rely on the Second Amended Complaint as providing notice to Kuhn of his Tort Claims Act claims.

Plaintiff also argues that summary judgment should be denied to conduct further discovery on this issue. (ECF No. 87–2 p. 16.) "[A] court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). Under Federal Rule of Civil Procedure 56(d), a party opposing summary judgment may submit an affidavit or declaration requesting time to conduct

further discovery. *See Shelton v. Bledsoe*, 775 F.3d 554, 567 (3d Cir. 2015). Plaintiff, however, has not submitted such an affidavit or declaration. I deny this request because plaintiff has not complied with the requirements of Rule 56(d).

Almost three years after the incident, plaintiff has not presented evidence that he either filed a timely notice of claim, received permission from a Superior Court judge to file a late notice of claim, or that he is in the process of seeking permission from a Superior Court judge. "After the expiration of that one-year period to file a late notice of claim … the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail." *H.C. Equities*, 247 N.J. at 383 (internal quotation marks omitted). Therefore, I conclude that Kuhn is entitled to judgment as a matter of law on the Tort Claims Act claims.

## V. CONCLUSION

For the reasons stated above, I will dismiss the official capacity federal claims with prejudice and dismiss the individual capacity federal claims without prejudice. I will award summary judgment to Kuhn on plaintiff's Tort Claims Act claims. An appropriate Order accompanies this Opinion.

                                                   */s/ Edward S. Kiel*
                                                   **EDWARD S. KIEL**
                                                   UNITED STATES DISTRICT JUDGE

Dated: December 3, 2024